1

**HUNTER PYLE, SBN 191125**
**CHAD SAUNDERS, SBN 257810**

2

SUNDEEN SALINAS & PYLE

3

428 Thirteenth Street, Eighth Floor
Oakland, California 94612

4

Telephone: (510) 663-9240
Facsimile:  (510) 663-9241

5

Emails: hpyle@ssrplaw.com; csaunders@ssrplaw.com

6

*Attorneys for Plaintiff Thomas Flessner*

7

**UNITED STATES DISTRICT COURT**

8

**NORTHERN DISTRICT OF CALIFORNIA**

9

10

| | |
|---|---|
| THOMAS FLESSNER, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **AGE DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT** |
| TESLA MOTORS, INC., | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Thomas Flessner complains and alleges as follows:

## I.   INTRODUCTION

1.   Plaintiff Thomas Flessner ("Plaintiff") brings this age discrimination action against his former employer, Defendant Tesla Motors, Inc. ("Defendant").  Defendant employed Plaintiff as an engineer at its Fremont, California manufacturing facility. Plaintiff is informed and believes and on that basis alleges that Plaintiff's age (69) was a substantial motivating factor in Defendant's decision to terminate his employment on or about February 9, 2016.

2.   Plaintiff therefore brings this action for damages against Defendant for age discrimination in violation of the Fair Employment and Housing Act ("FEHA"), California Government Code section 12940.

## II.   PARTIES

3.   Plaintiff Thomas Flessner is currently a resident of Phoenix, Arizona. Defendant employed Plaintiff as an engineer at Defendant's manufacturing facility in Alameda County, California from approximately December 2012 until February 9, 2016.

4.   Defendant Tesla Motors, Inc. is a Delaware corporation. Tesla employed Plaintiff at its factory located at 45500 Fremont Blvd., Fremont, California 94538.

## III.   JURISDICTION AND VENUE

5.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6.   Venue is proper in this Court under 28 U.S.C. § 1391(a). Defendant conducts business in the State of California. The unlawful acts alleged herein occurred in the State of California and in this District.

### Intradistrict Assignment

7.   Intradistrict assignment to the Oakland or San Francisco Division is proper because the events giving rise to this action occurred in Alameda County.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.     On or about September 29, 2016, Plaintiff filed a timely charge of discrimination with the Department of Fair Employment and Housing (hereinafter "DFEH"). At Plaintiff's request, the DFEH issued a right-to-sue notice on September 29, 2016.

## V.     STATEMENT OF FACTS

9.      Plaintiff, age 69, worked for Defendant for four (4) years, first as a contract employee and then as a regular employee.

10.     Plaintiff's employment began in February 2012 as a contract employee in Tennessee working on casting machines. In October that year, after observing his work, Elon Musk, Tesla Chairman, Product Architect and CEO, praised Plaintiff for his casting work. As a result, in December 2012, Plaintiff was asked to join Tesla as a manager of casting technologies. He accepted.

11.     Throughout his work for Tesla, Plaintiff was an exemplary employee. He brought more than 45 years of engineering experience to the company. He also brought his patented self-supporting billet technology (Patent number: 5865238), which he was in the process of implementing when he was suddenly terminated. He received positive performance reviews. Prior to a change in leadership at the end of his tenure, there were no complaints about the quality or speed of his work.

12.     As a regular employee in California, Plaintiff's duties included bringing online the low-pressure casting facility in Fremont and overseeing the move of casting machines from Tennessee to California. For some months he worked alongside a manager in the production casting group named Mark Young. Mr. Young was very negative and disrespectful towards Plaintiff. Mr. Young would not accept any feedback Plaintiff tried to provide. Moreover, when Plaintiff offered feedback, Mr. Young responded with comments such as "I don't need that from an old guy like you."

13.     In the spring of 2013, Tesla's materials engineering group in the Vehicles department asked Plaintiff to join their team as a Staff Engineer.  He happily transferred to that

department.  Ben Zabik, a materials engineering manager, became his supervisor.  In November 2013, Plaintiff's performance review was very positive.  He received a letter telling him that his yearly salary would increase and that he would receive stock options with the company because of the exceptional job that he had done.

14.     In the materials group, Plaintiff interacted directly with vehicle engineers. He worked on product design, production costing, materials sourcing, and improving production processes, among other things. He enjoyed working for Mr. Zabik and was happy in his position. While Mr. Zabik was his supervisor, Plaintiff received no complaints about the quality or speed of his work.

15.     The other engineers in the materials group included Alec Pezeshkian, Senior Engineer (age, approximately, 28), Grant Pattinson, Metals Specialist / Engineer (age, approximately, 38), Garrett Rayner, Senior Engineer Metals (age, approximately, 24), Kenan Ulsu, Senior Mechanical Design Engineer (age, approximately, 26), Kevin Newland, Engineer (age, approximately, 22), Yayong Liu, Staff Materials Engineer (age, approximately, 35), Huilen Quiroga, Engineer (age, approximately, 22), and Finley Marbury, Engineering Intern (age, approximately, 21). Their average age is 27. Plaintiff was 69 at that time.

16.     In July 2015, Plaintiff was diagnosed with congestive heart failure. He was hospitalized and took only two weeks off of work. When he returned Mr. Zabik warned Plaintiff to tread carefully because "these guys are gunning for you."

17.     When Plaintiff returned to work, Paul Edwards, age 36, a senior manager of materials engineering who had been hired from Boeing, was his new supervisor.

18.     Plaintiff informed Mr. Edwards that he was recovering from congestive heart failure. Mr. Edwards responded dismissively to the affect that he did not care why Plaintiff had been out.  He then asked Plaintiff a lot of pointed questions about the self-supporting billet project for casting that Plaintiff was working on and why he was not finished.  Plaintiff tried to explain that he needed to run tests before recommending where this project could be applied at Tesla.  This meeting would set the tone for the interactions Plaintiff had with Mr. Edwards.

19.     After returning to work, the quality of Plaintiff's work did not change.  However, when Mr. Edwards became Plaintiff's manager, Plaintiff began to be excluded from meetings. Plaintiff had hardly any communication with or feedback from Mr. Edwards.  The one-on-one meetings he had scheduled with Mr. Edwards were often cancelled.  The meetings that were not cancelled were filled with Mr. Edwards criticizing the speed of Plaintiff's project.

20.     Mr. Edwards also treated Plaintiff differently than his younger co-workers.  For example, Mr. Edwards included the young engineers in meetings and took them out to lunch, but ignored Plaintiff.  Additionally, in August 2015, the materials group took a camping trip as a team-building exercise.  Due to his physical disability, Plaintiff was not able to participate in the hiking and camping part of the trip.  As a result, he was made to feel like an outsider from the younger members of the materials group.  Furthermore, the younger engineers were not criticized for the speed of their work by Mr. Edwards even though they did not accomplish their projects any faster than Plaintiff.

21.     In the first week of September 2015, Plaintiff received his first performance review from Mr. Edwards.  The performance review gives ratings of 1 to 4 in different areas.  For the innovation and teamwork sections, Plaintiff scored a 3 and a 4 and was told that he was a key resource for casting.  However, Plaintiff received a 2 in the individual productivity and resourcefulness section.  Overall, his scores continued to show that he was meeting the company's expectations.  However, he was told that there were concerns about the rate of progress of his project and the overall value of the new technology on which he was working.  Specifically, Mr. Edwards told Plaintiff that he was not working fast enough.  This criticism was unreasonable because it held Plaintiff to a higher standard than the other, younger, engineers.  It was clear to Plaintiff that Mr. Edwards was implying that he worked slower because of his age.  His work had not changed and his review showed that he continued to provide value to the company.

22.     In October 2015, Mr. Edwards placed Plaintiff on a performance improvement plan ("Action Plan"). Even though Mr. Edwards was supposed to be more closely monitoring Plaintiff's work toward the Action Plan goals, between October 2015 and February 2016 they met only a

handful of times.  During those meetings, Mr. Edwards continued to unreasonably criticize the speed of Plaintiff's work on the self-supporting billet project and development of a nanoparticulate application specifically.

23.     During the time the Action Plan was in effect, Plaintiff worked diligently toward achieving its goals, including the following:

• Self-supporting billet applications. Plaintiff had run samples previously showing that the method he had developed worked, i.e. micrographs were done and a full report had been presented.  The material supplier Tesla was going to use for this process was late in delivering the material and runs were scheduled for later in February 2016.  Plaintiff provided these explanations, but meetings with Mr. Edwards were almost always postponed.  Plaintiff made written submissions. Mr. Edwards rejected them, not because of any substantive problems, but because of their formatting.

• Component testing. Plaintiff engaged in casting component testing during this time, with purchase orders placed and engineering underway, meeting the Action Plan goals.

• Participation in other Materials engineering projects. Although it was included in the Action Plan, Plaintiff was never asked to contribute to other aspects of the materials projects, such as sheet metal, adhesives, fasteners and coatings, although he was qualified and willing to do so.  He was only assigned to the cast aluminum product, while the younger engineers were given diverse assignments.

• Casting engineering and production support. Plaintiff spent one to two days per week working with Tesla's casting team in Lathrop, California. He helped with meetings regarding Design of Experiment implementation, gating and runner analysis, thermal balance issues, and working with offsite suppliers.  He spent the week before Christmas 2015 in Indiana assisting Tesla's casting supplier to ramp production of Tesla's Model X cast structural components.

• Casting lab progress. By late October 2015, the casting lab was completed and functional.

24.     Despite his compliance with the Action Plan, on February 9, 2016, Plaintiff was

terminated from Tesla. Mr. Edwards told Plaintiff that it was because he did not meet their expectations or address the concerns that they had on self-supporting billet project.  As set forth above, that assertion was false.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### AGE DISCRIMINATION IN VIOLATION OF THE FEHA
#### (Government Code § 12940)

25.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiff alleges a cause of action as follows.

26.    Tesla is an employer within the meaning of the FEHA.

27.    Plaintiff was an employee of Tesla.

28.    Tesla discharged Plaintiff

29.    Plaintiff's age was a substantial motivating reason for Tesla's decision to discharge Plaintiff.

30.    Plaintiff was harmed.

31.    Tesla's conduct was a substantial factor in causing Plaintiff's harm.

32.    As a result of such actions and consequent harms, Plaintiff has suffered damages in an amount to be proved at trial.

33.    Plaintiff, therefore, requests an award of lost wages and stock options, pre-judgment interest, attorneys' fees and costs, and punitive damages, and other relief as described below.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

    a.    An award of compensatory damages, including damages for lost wages and stock options;

    b.    Pre-judgment interest on the value of Plaintiff's lost wages and stock options;

    c.    Statutory attorneys' fees and costs;

    d.    Punitive damages;

e.      An award to Plaintiff of such other and further relief as this Court deems just and proper.


DATED:  September 30, 2016                    SUNDEEN SALINAS & PYLE


                                              By:  __/s/__*Hunter Pyle*____
                                                   Hunter Pyle

                                              *Attorneys for Plaintiff Thomas Flessner*


### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of this matter on all claims so triable.

Dated: September 30, 2016                    SUNDEEN SALINAS & PYLE


                                              By:  __/s/__*Hunter Pyle*____
                                                   Hunter Pyle

                                              *Attorneys for Plaintiff Thomas Flessner*